+UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-23880-BLOOM/Otazo-Reyes**

TALICIA COOPER,

      Plaintiff,

v.

EMPOWER U INC.,
and BETTER WAY OF MIAMI, INC.,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Empower "U", Inc.'s ("Empower") Motion to Dismiss Count V of the Amended Complaint, which raises a claim for Intentional Infliction of Emotional Distress ("IIED"). ECF No. [35] ("Motion"). Plaintiff Talicia Cooper "Cooper") filed a Response, ECF No. [40], and Empower filed a Reply, ECF No. [41]. The Court has carefully considered the parties' submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

### I.    BACKGROUND

The following facts are derived from the Amended Complaint, ECF No. [31], and the Court accepts the factual allegations as true at the pleading stage. This case concerns Empower's actions following an assault on their former employee, Cooper, by a third party. Cooper worked as a medical assistant for Empower, a health center that provides mobile services. ECF No. [31] ¶¶ 9-11. While on duty in the mobile unit bus, a patient physically and sexually attacked Cooper while she was providing services at Better Way of Miami. *Id.* ¶ 14. Cooper was able to free herself from the attacker and sustained physical injuries and emotional trauma in the process. *Id.* ¶ 15.

Cooper immediately reported the incident to her supervisor, Tangelia Roundtree, who then instructed Cooper to return to work, despite knowing that Cooper had just experienced a sexual assault. *Id.* ¶¶ 28-29, 32. Cooper finished the last two hours of her shift "[d]espite being completely distraught, emotionally shaken, and physically injured." *Id.* at ¶ 33.

At the end of her shift, Cooper was called into a meeting with Roundtree, Doctor Darren Thornton, Empower's Medical Director, and another medical assistant. *Id.* ¶ 37. Dr. Thornton shrugged his shoulders upon learning of the attack and said, "that's what happens when you look a certain way." *Id.* ¶ 38. Dr. Thornton also told Cooper, "wear a lab coat to cover [your] hips and butt"; "you smile too much, you're too friendly, you invite this behavior"; and Roundtree scolded her saying, "you shouldn't have closed the door" to the bus. *Id.* ¶¶ 39-41. Cooper alleges that she was wearing company-assigned scrubs and had to close the door to protect patient privacy. *Id*. Empower did not offer Cooper medical attention or make provisions for her to report the incident to law enforcement. *Id.* ¶¶ 42-43.

In the following months, "Cooper was subjected to unwelcome sexual harassment." *Id.* ¶ 41. For example, when Cooper was wearing a brace on her hand because of the attack, an Empower employee commented, "you hurt your dick sucking hand." *Id.* ¶ 46. Cooper alleges that Dr. Thornton also indicated that she got what she deserved because "that's what she gets for walking in tight ass pants. That's what happens when she looks and dresses like that." *Id.* ¶ 50. In addition, Empower actively disseminated information about Cooper's attack. *Id*. ¶ 47. Cooper alleges further that Dr. Thornton instructed other employees to ignore her, that she should stop acting like something was wrong, and "maybe if she wasn't wearing all that shit showing off her ass and body this wouldn't have happened to her." *Id.* ¶¶ 51-53. Phara Benoit, Empower's COO, indicated that "nothing happened" to Cooper, and Roundtree told her, "you're a liability." *Id*. ¶¶ 54-

55. Cooper asserts that these incidents were part of a campaign to terrorize Cooper and cause her emotional trauma with the purpose of making her want to resign. *Id*. ¶ 56. Cooper alleges that she eventually left her job, having been constructively terminated due to Empower's inappropriate conduct. *Id.* ¶ 68.

As in the original complaint, *see* ECF No. [1], Cooper asserts eight causes of action in the Amended Complaint, but only one is at issue in the Motion: the claim of Intentional Infliction of Emotional Distress (Count V).[1] Empower contends that Cooper's allegations do not show that its conduct was sufficiently egregious to support a cause of action for IIED. ECF No. [35] at 2.

## II.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the

---

[1] The Court dismissed Cooper's IIED and invasion of privacy claims (Counts V and VI) in the original complaint without prejudice and with leave to amend. In the Motion, Empower has not challenged Cooper's reasserted invasion of privacy claim.

plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

## III.    DISCUSSION

In order to state a claim for IIED, a plaintiff must allege that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Under Florida law, "[w]hether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citing *Medina v. United Christian Evangelistic Ass'n,* No. 08-22111-CV-Cooke, 2009 WL 653857, at *4 (S.D. Fla. Mar. 9, 2009)); *see Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) ("Whether conduct is outrageous enough to support a claim of [IIED] is a question of law, not a question of fact.") (citing *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)).

Empower argues that its conduct did not include repeated physical contact with Cooper as

4

required under Florida law, and that Empower's alleged verbal abuse alone is not sufficiently outrageous to state a cause of action for IIED. In response, Cooper argues that Empower's conduct was not solely verbal abuse, and that by virtue of Empower's knowledge of her susceptibility to emotional distress and Empower's authority over Cooper, the IIED claim is sufficiently alleged. Cooper argues further that even if Empower's conduct was solely verbal abuse, such conduct is sufficient to sustain an IIED claim.

### A. Nature of Conduct Alleged

As a threshold issue, the parties disagree with respect to the precise nature of the alleged conduct giving rise to Cooper's IIED claim. Empower contends that it was only verbal yet Cooper asserts that Empower's conduct did not just consist of verbal abuse. Upon review, Empower reads the Amended Complaint too narrowly.

In the Amended Complaint, in addition to the inappropriate verbal comments, which included blaming Cooper for the attack ("that's what happens when you look a certain way"; "wear a lab coat to cover [your] hips and butt"; "you smile too much, you're too friendly, you invite this behavior"; "you're a liability"), intentional conduct on the part of Defendant is sufficiently alleged. Cooper alleges that she was immediately sent back to work after reporting her assault, and that Empower made no provisions for medical treatment or reporting the incident to law enforcement. Cooper also alleges that Empower intentionally disseminated information about her attack, which resulted in rumors and inappropriate comments by others, and that other employees were instructed to ignore her, with the ultimate motive of getting her to resign. Properly viewed, those actions, in conjunction with the inappropriate harassing comments made by Thornton, Benoit, and Roundtree, constitute the basis of Cooper's claim. As such, the Court disagrees with Empower's

characterization of Cooper's claim as arising from verbal abuse alone.[2]

### B. Outrageousness of the Conduct Alleged

Nevertheless, the question remains as to whether the alleged comments in conjunction with

Empower's further actions are sufficiently outrageous to support a claim for IIED. "While there is

no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has

evolved an extremely high standard." *Garcia*, 838 F. Supp. 2d at 1339 (citation omitted). The

Florida Supreme Court, when it recognized the common law tort of IIED, adopted the definition

of "extreme and outrageous" conduct set forth in the Restatement (Second) of Torts (1965) § 46

as follows:

> It has not been enough that the defendant has acted with an intent which is tortious
> or even criminal, or that he has intended to inflict emotional distress, or even that
> his conduct has been characterized by "malice," or a degree of aggravation which
> would entitle the plaintiff to punitive damages for another tort. Liability has been
> found only where the conduct has been so outrageous in character, and so extreme
> in degree, as to go beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community. Generally, the case is
> one in which the recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and lead him to exclaim,
> "Outrageous!"

*Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985). However, "[m]ere insults,

indignities, threats, or false allegations" are not enough. *Williams v. Worldwide Flight Servs., Inc.*,

877 So. 2d 869, 870 (Fla. 3d DCA 2004). Indeed, even allegations of "reprehensible, objectionable,

and offensive" conduct have been rejected as insufficient to state a claim for intentional infliction

of emotional distress. *Id*. Ultimately, "[t]he viability of a claim for intentional infliction of

---

[2] The Court also disagrees that verbal abuse must always be accompanied by offensive physical harassment in order to support an IIED claim under Florida law. Indeed, in *Nims v. Harrison*, 768 So. 2d 1198 (Fla. 1st DCA 2000), the court reversed the dismissal of an IIED claim based upon words alone. In *Nims*, the plaintiff teacher alleged that two students participated in the production and distribution of a newsletter in which the author threatened to kill the plaintiff and rape her children. *Id*. at 1201. The court in *Nims* determined that those allegations were sufficiently outrageous to sustain a claim for IIED. *Id*.

emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at bar." *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1558 (S.D. Fla. 1996) (citations omitted).

Cooper argues that a lower standard should apply because Empower knew that she was peculiarly susceptible to emotional distress after her attack, and because of the employer-employee relationship. Indeed, "[i]n certain instances, courts have allowed plaintiffs to state a claim for [IIED] if the plaintiff 'is peculiarly susceptible to emotional distress, and the other person knows it,' wherein courts may use a lower standard for 'outrageous' to evaluate the conduct in question." *Bakar v. Bryant*, No. 13-21927-CIV, 2013 WL 5534235, at \*3 (S.D. Fla. Oct. 7, 2013) (citing *Jenks v. Naples Comm'y Hosp.*, 829 F. Supp. 2d 1325, 1256 (M.D. Fla. 2011)). Moreover, "the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for a claim of [IIED]." *Liberty*, 968 So. 2d at 596 (citing Restatement (Second) of Torts § 46 cmt. e.).[3]

Comment "f" to section 46 of the Restatement explains how knowledge of a person's particular susceptibility to emotional distress is relevant in determining whether the conduct alleged is sufficient:

> f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

Restatement (Second) of Torts § 46 cmt. f. According to Defendant, "Cooper was not known by

---

[3] Comment "e" to section 46 of the Restatement explains that "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."

Case No. 21-cv-23880-BLOOM/Otazo-Reyes

Empower U to have any prior mental or physical condition that an instruction to return to work would have worsened . . . [or] to have a mental of physical condition that mocking or derogatory comments would have made substantially worse." ECF No. [41] at 6. But Empower does not take into account all of the conduct alleged. The Court concludes that the allegations warrant the use of a lower standard of outrageousness.

The Court finds *Thomas v. Hospital Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246 (Fla. 2d DCA 2010), to be instructive. In that case, medical staff administered a lethal dose of medication to a patient after hip surgery. 41 So. 2d at 248-49. They then concealed and falsified the cause of her death in hospital records and notified her family that she died from the "stress of surgery." *Id*. at 249. A complete autopsy was not performed, and the decedent's body was released to her family. *Id*. After the medical examiner learned of her true cause of death, he contacted her family during her funeral and demanded that her body be returned immediately for another autopsy. *Id*. In determining that the IIED claim was sufficiently pleaded, the court observed that "[w]e believe that in a situation where a person's loved one has died, it would be apparent to anyone that the person would be susceptible to emotional distress, and therefore, that the action of providing false information concerning the loved one's cause of death meets the standard for a claim of outrage[.]" *Id*. at 256.

*Estate of Duckett v. Cable News Network LLLP*, No. No. 5:06-cv-444-Oc-10GRJ, 2008 WL 2959753, at *5 (M.D. Fla. July 31, 2008), is also persuasive. In *Duckett*, a mother whose son was missing gave a recorded telephonic interview to a news show discussing her missing child. *Id*. at *1. Before the show was aired, the mother committed suicide. *Id*. In support of its claim for IIED, the estate alleged that the news show misrepresented the purpose of the mother's appearance on the show, and that news show knew that she was in a "severe state of mental anguish and

distress," but subjected her to interrogation and veiled accusations that she was responsible for her son's disappearance and death. *Id*. The defendants in *Duckett*, like Empower, also argued that their conduct did not rise to the requisite level of outrageousness, but the court determined that the allegations were sufficient. *Id*. at *5. The court observed that "[i]n particular, the Plaintiffs have alleged that at the time the Defendants secured Ms. Duckett's appearance on the show, the Defendants were very much aware that Ms. Duckett was already suffering emotional and psychological stress from the disappearance of her son[.]" *Id*.

In the instant case, the Court finds that it would be apparent to anyone that an individual who has just been physically and sexually assaulted, similar to one who has learned of a loved one's death or a missing child, would be susceptible to emotional distress. Here, Cooper alleges that she immediately reported being physically and sexually attacked to her supervisor, but then was instructed to return to work despite her supervisor's knowledge that she had been attacked, with no provisions made to receive any medical attention or report to law enforcement. In addition, Cooper alleges that at the end of her shift that same day, her superiors proceeded to blame her for inviting the attack. Then to add further insult to injury, those same individuals allegedly disseminated information about Cooper's attack resulting in additional harassment. The Defendant's knowledge of Cooper's susceptibility to distress from the situation she had just experienced and immediately reported convinces the Court that the lower standard of outrageousness is appropriate in this case.

Using this lower standard and taking Cooper's allegations as true, the conduct described in the Amended Complaint is sufficient to state a claim for IIED. The actions of sending her back to work without providing the opportunity for her to be examined by a doctor or report the incident to law enforcement, particularly where she had just been attacked, and then to engage in victim-

blaming and disseminating information about her attack to others is conduct that an average member of the community would consider to be atrocious, and utterly intolerable in a civilized community. *Metropolitan Life*, 467 So. 2d at 278-79; *see Liberty*, 968 So. 2d at 596 (finding that, although allegations of conduct alone were "not so outrageous," when viewed in light of defendant's alleged knowledge of plaintiff's susceptibility to emotional distress, they were outrageous).

## IV.    CONCLUSION

Accordingly, the Motion, **ECF No. [35]**, is **DENIED**. Defendant shall file its answer to the Amended Complaint **no later than May 16, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 9, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

10